**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CHAD ISENBERG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case. No. 15-CV-135-TCK-FHM |
| ) | |
| PHILLIPS 66 COMPANY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment and Brief in Support (Doc. 24). Defendant Phillips 66 Company ("Defendant") seeks summary judgment on all claims asserted against it by Plaintiff Chad Isenberg ("Plaintiff"). For the reasons explained below, Defendant's Motion is granted.

**I.    Factual Background**

The following facts are either undisputed or viewed in a light most favorable to Plaintiff. Defendant, or one of its predecessor entities, hired Plaintiff in 1997. From 1997 to 2010, Plaintiff worked primarily in the pipeline and manufacturing areas and had only a few years experience in the information technology field. In 2010, Plaintiff became an Identity Management Analyst in Defendant's Identity Management Group. Keith Hall ("Hall") was one of Plaintiff's supervisors when Plaintiff became an Identity Management Analyst. Robert Beets ("Beets") was Hall's direct supervisor.

In 2013, Defendant began to implement a new password management system (the "Dell system"). During 2013 and 2014, Plaintiff's job responsibilities included assisting with implementation of the Dell system, although Plaintiff was not in charge of the overall implementation. The implementation of the Dell system proved to be difficult for the Identity

Management Group, including Plaintiff. Plaintiff indicated to Hall that he was having a tough time understanding the Dell system. In response, Defendant sent Plaintiff and a co-worker to a week-long training on the Dell system in September 2013. Plaintiff denied the training provided any value.

In October 2013, Hall, Beets, and human resources representative Tom Schroeder participated in a "Calibration" meeting, in which supervisors discuss the annual ratings of employees. Plaintiff received an overall annual rating of "4" or "Below Expectations."[1] (Ex. 3 to Pl.'s Resp.) Defendant's policy at the time required issuance of a "Performance Improvement Plan" ("PIP") for any employee who received an overall rating of "4" or "Below Expectations."

In February 2014, Plaintiff received his final written 2013 Performance Agreement, reflecting an overall performance rating of "Below Expectations" for 2013. Accordingly, Plaintiff began a 90-day PIP on February 13, 2014. With regard to his performance while on the PIP, Plaintiff was instructed:

> To successfully complete this work plan, you must significantly improve your level of follow through on commitments and focus given to the overall responsibilities of your position. . . . Failure to demonstrate immediate and sustained improvement is unacceptable. . . . Failure to meet these requirements or any other performance issues will result in further disciplinary action up to and including termination.

(Doc. 24-1.) During the PIP, Hall and Greg Ingram ("Ingram") were Plaintiff's supervisors.

In late April 2014, Hall and Ingram provided Beets with their observations regarding Plaintiff's performance during the PIP, both noting that Plaintiff lacked significant improvement in several areas outlined in the PIP. On May 2, 2014, Plaintiff met with Hall and Ingram regarding the Dell system. Following the meeting Hall and Ingram concluded that Plaintiff lacked the level of

---

[1] The rating scale ranged from 1 to 4, with 1 being "Significantly Above Expectations" and 4 being "Below Expectations."

understanding of the Dell system required for his position and had not successfully completed his PIP.  As a result, Plaintiff was terminated May 13, 2014 for "failure to successfully complete the Performance Improvement Plan and other related performance issues."  (Ex. 1 to Def.'s Mot. for Summ. J. at 105.)  At the time of his termination, Plaintiff was 42 years old.

Following his termination, Plaintiff filed a charge of discrimination with the EEOC, alleging age discrimination.  After receiving notice of right to sue, Plaintiff filed this case, asserting claims under the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1) ("ADEA").  Prior to his termination, Plaintiff never made any allegation of age discrimination.

## II. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party.  *Id*.  However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The party seeking to overcome a motion for summary judgment must also make a showing sufficient  to establish the existence of those elements essential to that party's case.  *See Celotex Corp. v.  Catrett*, 477 U.S. 317, 323-33 (1986).

## III. Analysis

### A. ADEA Claim

Plaintiff alleges Defendant violated the ADEA by discriminating against him because of his age, subjecting him to disparate treatment, and ultimately terminating his employment.  Under the

ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA requires "but-for" causation, meaning "to succeed on a claim of age discrimination, a plaintiff must prove by a preponderance of the evidence that her employer would not have taken the challenged action but for the plaintiff's age." *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010). A plaintiff may meet this burden using either direct or circumstantial evidence. *Id.*; *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). Where, as here, a plaintiff relies on circumstantial evidence, the Plaintiff must satisfy the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

The *McDonnell Douglas* framework requires a plaintiff to first make a prima facie case of discrimination under the ADEA. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* "If the defendant does so, the plaintiff must either show that his . . . age . . . was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." *Id.* (internal quotation marks omitted).

To state a prima facie case of age discrimination under *McDonnell Douglas*, a plaintiff must show, by a preponderance of the evidence, (1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination. *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015).[2]

---

[2] Over time, the Tenth Circuit has utilized similar versions of the prima facie test and, in recent years, has expressed a preference for more concise formulations such as that cited here. In *McDonnell Douglas*, the Supreme Court noted that the elements required for the prima facie case may vary depending upon the context of the claim and the nature of the alleged conduct. *Id.* at 1266 n.1.

Defendant does not dispute that Plaintiff was a member of a protected class but alleges Plaintiff cannot satisfy the second and third elements of the prima facie case.

### 1.     Adverse Employment Action

Plaintiff asserts the following adverse employment actions: termination, disparate training opportunities, placement on a PIP, and not permitting Plaintiff to take a long lunch to teach fitness classes. Defendant does not dispute that Plaintiff's termination constitutes an adverse employment action but contends the other alleged actions do not.

The Tenth Circuit liberally defines the phrase "adverse employment action" and takes a case-by-case approach, examining the unique factors in each case. *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011). An adverse employment action "generally involves a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Ayalla v. U.S. Postmaster Gen.*, --- F. App'x —, 2016 WL 5937983 (10th Cir. Oct. 12, 2016) (unpublished) (quoting *Jones*, 617 F.3d at 1279). A "mere inconvenience or an alteration of job responsibilities" does not constitute an adverse employment decision. *Jones*, 617 F.3d at 1279.

Aside from his termination, Plaintiff has not established the existence of any adverse employment decision. Plaintiff alleges he requested additional training on the Dell system and was denied such an opportunity by Hall, who said Plaintiff had been provided training but "had not embraced the training fully." (Pl.'s Resp. at 8.) Even if Plaintiff did not receive additional training or training identical to that of certain co-workers, Plaintiff received essential training that allowed him to perform the functions of his job. Plaintiff's placement on the PIP did not involve a significant change in his employment status, even if it meant he could no longer teach fitness classes at lunch. *See Anderson v. Clovis Mun. Schools*, 265 F. App'x 699, 704 (10th Cir. 2008)

(unpublished) (holding that placement of teacher on "growth plan" did not constitute adverse employment action) ("While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise minor and even trivial employment actions . . . would form the basis of a discrimination suit."). The Court finds that Plaintiff experienced no significant change in employment status other than his termination. Accordingly, Plaintiff's termination is the only adverse employment action at issue.

### 2. Inference of Discrimination

Plaintiff argues factors surrounding his termination support an inference of age discrimination. Specifically, Plaintiff alleges Hall had a "history of hiring younger individuals to replace otherwise qualified employees." (Pl.'s Resp. at 19.) Plaintiff also alleges Hall addressed younger employees more professionally than older employees, including Plaintiff. However, Plaintiff has not offered any evidence to substantiate these allegations. Although Plaintiff complains that the department was getting younger and younger, Plaintiff has not provided specific examples to show how the department was getting younger or how much younger, including the names and ages of both the older employees and the younger employees who allegedly replaced them. Such information would provide evidentiary support for Plaintiff's otherwise conclusory allegations and is especially relevant where Plaintiff, at age 42, is barely old enough to be part of a protected class.

One method by which a plaintiff can prove an inference of discrimination is "to show that the employer treated similarly situated employees more favorably." *EEOC v. PVNF, LLC*, 487 F.3d 790, 800-01 (10th Cir. 2007). Plaintiff argues Defendant treated Kaleb Long ("Long"), a younger employee who was also put on a PIP, more favorably than Plaintiff. Specifically, Plaintiff alleges Long failed to meet all of his goals while on the PIP but was nonetheless allowed to continue his employment after completion of the PIP. However, Exhibit 10 to Plaintiff's Response indicates that

Long "successfully completed the 90 day PIP." (Ex. 10 to Pl.'s Resp.) Long's 2013 Performance Agreement, the document on which Plaintiff relies, indicates that Long did not meet his goals for 2013 and would be placed on a PIP as a result. This document, therefore, has no bearing on whether Long met his goals while on the PIP. Additionally, it states that Long had technical proficiency but needed to improve certain management and organization skills, while Plaintiff's supervisors noted that he lacked technical proficiency. Plaintiff's arguments regarding Long are not persuasive and do not evidence an inference of discrimination.

The record is replete with evidence documenting Plaintiff's struggles with the Dell system and overall performance problems. As evidence that he was not having performance issues, Plaintiff cites a document indicating that "[f]rom a meeting the goals standpoint he is able to check off the goals as having been completed." (Ex. 3 to Pl.'s Resp. at 10.) The remainder of this document, however, clearly evidences Plaintiff's poor performance throughout 2013:

> Chad has had a difficult year. . . . Chads [sic] technical skills are below most of his peers and that has begun to be more obvious this year. He does a good job covering that up, but I'm starting to figure out better how to get this out in the open. I've told him a number of times that he is not meeting expectations and that this job may be more technical than he can handle.

(*Id*.) Plaintiff has not offered sufficient evidence to establish a prima facie claim of age discrimination. Although Plaintiff has demonstrated that he is a member of a protected class and experienced an adverse employment action, Plaintiff has not demonstrated that his termination took place under circumstances giving rise to an inference of discrimination.

### B.   Retaliation Claim

In his response to Defendant's Motion for Summary Judgment, Plaintiff states that he "dismisses this claim." However, Plaintiff never moved to dismiss such claim pursuant to Rule 41(b). Because Plaintiff conceded such claim in his response, the Court enters summary judgment in favor of Defendant on Plaintiff's retaliation claim.

7

**IV.     Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 24) is GRANTED.  Judgment will be entered separately.  Plaintiff's Motion in Limine (Doc. 27) is DENIED as moot.

**SO ORDERED** this 14th day of November, 2016.

_____
**TERENCE KERN**
**United States District Judge**

8